FILED'09 FEB 09 15:47 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GINGER GOSS,

       Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security

       Defendant.

Civ. No. 08-03029-TC

OPINION AND ORDER

Coffin, Magistrate Judge:

Plaintiff brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of a final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

1 Opinion and Order

## Background

Plaintiff filed an application for disability insurance benefits in 2004, alleging disability since 2000 based on chronic depression, post-traumatic stress disorder (PTSD), and short-term memory loss. Plaintiff's application was denied at both the initial and reconsideration stages; in 2007, an ALJ conducted a hearing and issued a decision finding that plaintiff was not disabled as defined under the Social Security Act. The Appeals Council denied review, and plaintiff timely filed a complaint in this court.

Plaintiff alleges that the ALJ erred in finding that her medical impairments did not meet medical listing 12.04 (Affective Disorders).

## Standard

The burden of proof rest on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet that burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

This court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

2 Opinion and Order

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## Disability Analysis

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. Id.; see also 20 C.F.R. § 404.1560(c)(2). The Commissioner can meet that burden "(a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines [the Guidelines] at 20 C.F.R. pt. 404, subpt. P, app. 2." Id.

Here, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset

3 Opinion and Order

date. Tr. 16; see 20 C.F.R. § 405.1520(b). At step two, the ALJ found that plaintiff had the following severe impairments: depression disorder, anxiety disorder, and substance abuse history in remission. Tr. 16; see 20 C.F.R. § 404.1520(c), 416.920(c).

However, at step three, the ALJ found that plaintiff's impairments did not meet or medically equal the requirements of a listed impairment. Tr. 16; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). The ALJ found that plaintiff retained "residual functional capacity" (RFC); however, she was unable to perform heavy or very heavy exertion work, she was restricted to simple, routine tasks, she was to have infrequent interaction with the general public, and she was to avoid hazards such as the operation of machinery. Tr. 17; see 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Tr. 19; see 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(iv), 416.920(f). At step five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as blind stitch machine operation or assembly of small products. Tr. 20; see 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

Therefore, the ALJ concluded that plaintiff had not been disabled, as defined under the Social Security Act, from March 31, 2000 to the date of the ALJ's decision. Tr. 20. Plaintiff

4 Opinion and Order

disputes the ALJ's finding at step three.

## Discussion

I. The ALJ properly found that Goss's impairments did not meet or medically equal the requirements of a listed impairment.

Plaintiff bears the burden of proving that she has an impairment that meets or equals the criteria of a listed impairment. 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listings); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004). Plaintiff did not prove that her impairments met or equaled those criteria.

The Listings describe impairments which are considered severe enough to prevent a person from performing gainful activities. 20 C.F.R. §§ 404.1525, 416.925. Plaintiff asserts that she met the requirements of Listing 12.04 (Affective Disorders). Specifically, plaintiff contends that the medical evidence established an inability to function and met the "C" criteria of Listing 12.04.

In general, section 12.00 of Appendix 1 (Mental Disorders) addresses the evaluation of mental impairments in nine diagnostic categories. Except for mental retardation and substance abuse addiction disorders, each section consists of a statement describing the disorder, "A" criteria (a set of medical findings), and "B" criteria (a set of impairment-related functional limitations measuring the degree of

5 Opinion and Order

severity)[1]. There are also C criteria, or "functional" criteria, for some disorders, including affective disorders such as plaintiff's. Overall, the impairment criteria are met if the diagnostic description <u>and</u> the criteria of both paragraphs A and B <u>or</u> A and C are met. The ALJ found that there was no evidence on the record of the severity required by the B or C criteria.

### A. Goss's Testimony

Goss testified that she was 42 years old and had not worked since 2000 due to depression, PTSD, ADD, and chronic pain.[2] Tr. 410. She was living in California at the time of the hearing. Tr. 416. She had just gotten custody of her son after he was removed from the home after his father physically abused him. She had an older son who was 17 at the time and not living with her. Goss and her husband had been in an abusive relationship for several years, divorcing and remarrying at least once. At the time of the hearing, they were still married but not living together. Tr. 411. Goss testified that she had a modified high school diploma. Tr. 421.

---

[1] Those criteria are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00C. They are met when at least two of the following are met: marked limitations in activities of daily living; marked limitations in social functioning; marked limitations in concentration, persistence, or pace; or repeated episodes of decompensation.

[2] Goss testified that she had a broken leg that had gone untreated for 13 years. Tr. 410. Nothing in the medical evidence supports that contention.

6 Opinion and Order

Goss testified that she was raising her nine-year-old son by herself, cooking for him and playing with him when he was not in school, and transporting him to and from school when it was in session. While he was at school, she watched television all day. She testified that she did not sleep well and took medication to help her sleep, but that it was not working well. Tr. 412. She said that her house was a mess because she had panic attacks. Tr. 413. The attacks kept her from leaving the house except to check on her son while he was playing outside or to take him to school. Tr. 413. She testified that her depression had gotten worse with age, and that she had been in counseling for the last two years. Tr. 414. Although she had been addicted to alcohol, used methamphetamine and other drugs, she had been sober since 2002. Tr. 415.

When asked why she was unable to work if she could take care of her son, Goss testified that she could not "handle two things, that's like two major jobs at once and I can't handle both of them." Tr. 415. When she last worked in 2000, she commuted and her mother helped her with daily chores. Tr. 415. She testified that her racing thoughts and anxiety made life stressful, and she did not foresee herself having the ability to work in the future. Tr. 416.

The ALJ asked Goss how she had traveled to the hearing in Klamath Falls (a distance of 98 miles), and she stated that she had driven herself. Tr. 417. She testified that it was "nerve-racking." Tr. 417. When asked about her broken leg, Goss testified that an x-ray had revealed the existence of a small fracture, and that it hurt to walk. Tr. 419-20. She

7 Opinion and Order

stated that it hurt to wear high heels or to stand for long periods of time. Tr. 420.

The ALJ found, based in part on Goss's own testimony, that she had been capable of making successful adjustments to other work in the past. The ALJ noted that, in Goss's written statements, she reported that her daily activities included driving her son to school and returning home to plan the day depending on what needed to be done. Tr. 18; Ex. 11E. He found that Goss reported that her depression, lack of motivation, and anxiety made her feel numb most of the day, and that her depression was getting worse. Tr. 18. However, the ALJ noted that Goss reported watching television, listening to the radio, and "goof[ing] around on the computer" while her son was at school. Tr. 18. She was able to help him with homework, do household chores, prepare meals, help with bathing, and read to him each evening. Tr. 18. The ALJ noted that she had testified about her inability to maintain her own hygiene due to lack of motivation and depression. Tr. 18.

B. Vocational Expert's Testimony

Frances Summers, a vocational expert, testified that Goss had worked as a telemarketer, food sales clerk, general office clerk, cashier, data entry clerk, front desk receptionist, and public interviewer. Tr. 422-23. All were semi-skilled or unskilled sedentary jobs. Tr. 423. The ALJ questioned the vocational expert about those jobs that Goss could still be expected to perform, noting that although she was literate, she probably could not perform heavy work or work with complex

8 Opinion and Order

tasks. Tr. 423. The ALJ also stated that he would rule out work with frequent interaction with the public, or work with machinery. The expert testified that the general office clerk or a back office position would be feasible. Tr. 423. However, because that was not "simple, routine type work," they may be too complicated. Tr. 424. The expert testified that Goss could still perform several jobs, including blind stitch machine operator, a light job requiring no skill, of which there were 115,000 in the national economy and 1,700 in the region, and assembler of small products, an unskilled light job of which there were 500,000 in the national economy and 7,500 in the region. Tr. 425. When asked by Goss's attorney if those jobs could be performed by "somebody who misses work even two days or three days a week," the vocational expert said no. Tr. 425.

C. The Medical Evidence

The ALJ stated that the medical evidence indicated that Goss had "impairments that are severe within the meaning of the Regulations." However, he found that those impairments, both severe and non-severe, singularly and in combination, were not accompanied by the findings specified for any impairment or combination of impairments included in any section of the Listings. Tr. 16. He noted that "[n]o treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment [in 12.00-mental disorders]." Tr. 16.

The ALJ discussed the medical evidence in detail. In

9 Opinion and Order

2004, clinical psychologist Jane Starbird, PhD, completed a comprehensive psycho-diagnostic evaluation and noted the Goss had no history of psychiatric hospitalizations, and was taking Remeron, trazadone, Wellbutrin, and ibuprofen. Tr. 182. She had reported seeing a counselor and last using alcohol and drugs in 2002. Tr. 182. Her mood was poor and depressed, her social skills were moderate, her thought processing poorly organized, her insight good, her judgment deemed moderate or poor, she was oriented in all three spheres, and there were overall no gross indications of memory impairment. Tr. 183-84. Dr. Starbird diagnosed PTSD, dysthymic disorder, and alcohol dependence in full remission. Tr. 184.

Plaintiff sought counseling again in 2005-07 with Lifeworks. Tr. 276-82, 296-375. At intake, the therapist assessed major depressive disorder, recurrent, mild; PTSD; and alcohol dependence in full remission. Tr. 375. The therapist assigned a Global Assessment of Functioning (GAF)[3] score of 60. Tr. 375. Previously, in 2004-05, Goss had been assigned GAF scores of 53 and 54 at another community health organization, and a GAF score of 60 in 2007 from a county mental health clinic. Tr. 192-214, 208, 211, 285-86. At that 2007 visit, a medical doctor assessed bipolar disorder II, PTSD, and alcohol dependence. Tr. 283-95.

---

[3] The GAF score describes psychological, social, and occupational functioning. A score of 51 to 60 indicates moderate symptoms or moderate difficulty in functioning, A score of 61 to 70 indicates some mild symptoms or some difficulty, but generally adequate functioning. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. Text Revision 2000) (DSM-IV-TR).

10 Opinion and Order

D.  The ALJ's Findings

The ALJ found that the B criteria (impairment-related functional limitations measuring the degree of severity) were not met. Again, those criteria are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00C. They are met when at least two of the following are met: marked limitations in activities of daily living; marked limitations in social functioning; marked limitations in concentration, persistence, or pace; or repeated episodes of decompensation.

The ALJ found evidence of "moderate" symptoms, tr. 19, while finding Goss's depression and anxiety to be severe impairments. "Severity" is measured according to functional limitations, using the four B criteria. The ALJ found that Goss had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Tr. 17. The ALJ therefore found that the B criteria were not met.

The ALJ also found that the C criteria were not met. The C criteria in Listing 12.04 are a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho-social support." One of the following is also required: (1) repeated episodes of decompensation, each of extended duration; (2) a residual

11 Opinion and Order

disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with indication of a continued need for such arrangement. Plaintiff argues that she meets both (2) and (3).

Plaintiff points to no evidence showing a condition of the severity required by C(2), that a minimal increase in mental demands or environmental change would be predicated to cause decompensation). "Episodes of decompensation" are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," giving rise to difficulties performing daily life activities, maintaining social relationships, concentration, persistence, or pace. 20 C.F.R. pt. 404, supt. P, app. 1, 12.00C.4. Episodes must be severe enough to require increased treatment or a less stressful situation. Id. Episodes of decompensation may be "inferred from medical records showing significant alterations in medication" or documentation of the need for a more structured support system (hospitalizations, for example) or other relevant information on record about the existence, severity, and duration of the episode. Id.

The medical evidence, plaintiff's reports of functioning, and her husband's report, as discussed by the ALJ, do not contain evidence of episodes of decompensation. Plaintiff was able to drive her son to and from school, perform household chores, and read. There is no evidence in the record of

12 Opinion and Order

hospitalizations. The plaintiff's husband reported that she took care of the children, cooked, cleaned, and shopped for the household. Tr. 18. She did laundry, ironed, sewed, and gardened. Tr. 18. She required reminding to get tasks accomplished and took medication to sleep at night. Tr. 18. There is simply no evidence in the record of any loss in adaptive functioning as required under the definition of decompensation.

The evidence likewise does not show a history of the inability to function outside of a highly supportive living arrangement as required by C(3). The ALJ found that no treating or examining medical source mentioned findings severe enough to satisfy the B or C criteria. The reviewing psychologist for the state found that the evidence did not establish that the B or C criteria were met. Tr. 264-65. At the reconsideration state, another reviewing psychologist affirmed those findings. Tr. 270.

The plaintiff does not dispute the ALJ's findings at step five, that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as blind stitch machine operation or assembly of small products. Tr. 20; see 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). However, the ALJ's discussion of that issue supports the finding that plaintiff is not disabled at step three. Dr. Starbird stated that the plaintiff's substance abuse problems had interfered with her ability to work; however, it was noted that she had no history of psychiatric hospitalizations and no history of suicide attempts. Tr. 17. The ALJ found that she had

13 Opinion and Order

"residual functional capacity" and had been sober since 2002. Tr. 19.

The ALJ's finding that plaintiff did not prove disability at step three pursuant to either the B or C criteria, or a combination thereof, is supported by substantial evidence in the record.

## Conclusion

For the foregoing reasons, the ALJ's determination was based on the proper legal standard and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

Dated this 29 day of January, 2009.

THOMAS M. COFFIN
United States Magistrate Judge

14 Opinion and Order